UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI McDONALD,                                    Case No. 13-12312

            Plaintiff,                        Victoria A. Roberts
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 11)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On May 24, 2013, plaintiff Terri McDonald filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Victoria A. Roberts referred this matter to the undersigned for the purpose

of reviewing the Commissioner's decision denying plaintiff's claim for disability

insurance benefits and supplemental security income.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 9, 11).

### B.  Administrative Proceedings

Plaintiff filed the instant claims for disability insurance benefits and

supplemental security income benefits on January 28, 2009, alleging disability
beginning January 20, 2009.  (Dkt. 7-5, Pg ID 154-56, 162-65).  Plaintiff's claims
were initially disapproved by the Commissioner on September 28, 2009.  (Dkt. 7-
3, Pg ID 92, 93).  Plaintiff requested a hearing and on May 19, 2011, plaintiff
appeared, without an attorney or other non-attorney representative, before
Administrative Law Judge ("ALJ") Lorenzo Level, who considered the case de
novo.  (Dkt. 7-2, Pg ID 51-71).[1]  In a decision dated September 20, 2011, the ALJ
found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 36-47).  Plaintiff requested
a review of this decision, and the ALJ's decision became the final decision of the
Commissioner when, after the review of additional exhibits,[2] the Appeals Council
on March 21, 2013, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 26-31);
*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] Plaintiff had previously appeared for a hearing before a different ALJ on February 4, 2011, but the hearing was adjourned so that plaintiff could try to find representation.  (Tr. 47-63).

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1964 and was 46 years old at the time of the

administrative hearing, and 44 years of age on the alleged disability onset date.

(Dkt. 7-5, Pg ID 154-56, 162-65).  Plaintiff had past relevant work as a cashier,

kitchen laborer, and a short order cook.  (Dkt. 7-2, Pg ID 47, 68).  The ALJ

applied the five-step disability analysis to plaintiff's claim and found at step one

that plaintiff had not engaged in substantial gainful activity since the alleged onset

date of January 20, 2009.  (Dkt. 7-2, Pg ID 41).  At step two, the ALJ found that

plaintiff's carpal tunnel syndrome with ulnar entrapment and tendonitis, right ear

deafness with tinnitus, degenerative disc disease, adjustment disorder, pain

disorder, right calcaneal spur, hypothyroidism, migraine (post-DLI), fibromyalgia

(post-DLI), anxiety (post-DLI), and cortical temporal volume loss/white matter

disease (post-DLI) were "severe" within the meaning of the second sequential

step, but that plaintiff's history of skin cancer was not severe.  (Dkt. 7-2, Pg ID 41-

42).  At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID

42-43).

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: frequently stoop, kneel, crouch, or crawl; frequent handling and fingering with the bilateral upper extremities; cannot be subject to a job that requires fine hearing capabilities; must not be subject to a job that requires working outside; and is limited to understanding, remembering, and carrying out simple instructions and performing simple tasks.

(Dkt. 7-2, Pg ID 43-46).  At Step Four, the ALJ found that plaintiff was able to perform her past relevant work as a cashier, as it is generally performed.  (Dkt. 7-2, Pg ID 47).  Based on the foregoing, the ALJ concluded that plaintiff had not been under a disability from January 20, 2009 through the date of the decision. (*Id.*).

## B.    Plaintiff's Claims of Error

Plaintiff disputes that she could perform her past relevant work as a cashier. She contends the ALJ improperly delegated his authority to the vocational expert in making the Step Four finding.  According to plaintiff, an ALJ's decision finding that a claimant can perform past relevant work must clearly state the rationale and specifically indicate the evidence that leads to the conclusion, citing *Hargenrader* v. *Califano*, 575 F.2d 434 (3d Cir. 1978); *Young* v. *Apfel*, 39 F. Supp.2d 1327 (N.D. Okla. 1999); and Social Security Ruling (SSR) 82-62, and this analysis

cannot be delegated to the vocational expert at Step Four of the sequential analysis. Plaintiff contends that the ALJ asked the vocational expert to assume one hypothetical, and that hypothetical resulted in the vocational expert testifying that plaintiff "could perform the cashier job as it is normally performed in the regional national economy." (Tr. 43). Plaintiff argues that this constitutes an improper shift of the ALJ's fact-finding responsibility and is an error of law that requires a remand for further proceedings.

Plaintiff also complains that the ALJ ignored the vocational expert's answers to the follow-up questions regarding the need to take unscheduled breaks more than once per week and how, if taken, that would be work preclusive. (Tr. 43). Plaintiff contends that if the ALJ would have considered the follow-up questions in the hypothetical, it would be clear that plaintiff was unable to perform her past relevant work or any other work. Plaintiff further asserts that the Third Circuit held in *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112 (3d Cir. 2000), that it is clear error for an ALJ to make a past relevant work determination that is contrary to uncontroverted evidence presented by claimant. Plaintiff argues that the ALJ here opined, contrary to the uncontroverted evidence presented by plaintiff, that plaintiff could perform her past relevant work. (Tr. 22).

Plaintiff further asserts that it is well established that when the ALJ finds

5

that an individual has the capacity to perform past relevant work, the

determination must contain specific findings of fact: (1) as to the individual's

RFC, (2) as to physical and mental demands of the past job or  occupation, and (3)

whether the individual's RFC would permit a return to their job or occupation.

*See* SSR 82-62.  Those findings must be supported by substantial evidence.

Plaintiff contends that in this case, there are no specific findings as to any of the

above three elements.  Specifically, plaintiff argues that there are no specific

findings as to why the ALJ chose to ignore plaintiff's testimony of her

impairments and the limiting effects of those impairments and, contrary to the

medical evidence, posed a hypothetical question that ignored plaintiff's limitations

and abilities.

Plaintiff asserts that in *Poindexter v. Apfel*, 94 F. Supp.2d 1176 (D. Kan.

2000), the court determined that the ALJ had delegated his fact-finding

responsibilities at Step Four of the sequential analysis to the vocational expert and

that such a practice is something that the 10th Circuit discourages.  The

*Poindexter* court cited *Winfrey v. Charter*, 92 F.3d 1017 (10th Cir. 1996), for the

proposition that "when the ALJ makes findings only about the claimant's

limitations, and the remainder of the step four assessment takes place in the VE's

head, we are left with nothing to review."  *Id*.  Plaintiff further asserts that the

court in *Dodds v. Commissioner of Social Security*, 2002 WL 1880754 (E.D.

Mich. June 30, 2002), held that "the ALJ was not required to consult a VE to determine Plaintiff's residual functional capacity. Determining past relevant work experience involves a determination of the 'physical and mental demands of jobs a claimant has performed in the past.' . . . In this regard, the claimant is the 'primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.' [ ] Such an inquiry occurs at Step 4 and does not require the use of vocational testimony." *Id*. at *3 (citing *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996)). Plaintiff continues that while it appears there are no cases directly on point in this District or Circuit with the preceding paragraph's argument, the *Dodds* case affirms that "Step 4 . . . does not require the use of vocational expert." Plaintiff asserts that is because Step Four is the ALJ's fact-finding responsibility. Plaintiff concludes that the ALJ here improperly delegated his analysis regarding past relevant work to the vocational expert. According to plaintiff, this improper shift of the ALJ's fact-finding responsibility was an error of law that requires a remand for further proceedings. Plaintiff argues that the decision of the ALJ should be reversed and benefits awarded, as there is substantial evidence supporting the ALJ's follow-up questions–a person's need to take unscheduled breaks–that concludes there is no past work or any other work plaintiff would be able to perform. (Tr. 22, 43).

Plaintiff also argues that the ALJ failed to properly assess plaintiff's credibility and failed to properly evaluate the medical records, and thus formed an inaccurate hypothetical that did not accurately portray plaintiff's impairments. Plaintiff asserts that it is documented that she has carpal tunnel syndrome with ulnar entrapment and tendonitis, right ear deafness with tinnitus, degenerative disc disease, adjustment disorder, pain disorder, right calcaneal spur, hypothyroidism, migraine (post-DLI), fibromyalgia (post-DLI), anxiety (post-DLI), cortical atrophy/temporal volume loss/white matter disease (post-DLI), yet the ALJ found the claimant is capable of performing her past relevant work. (Tr. 17). Plaintiff contends that this determination is erroneous. Plaintiff testified at the hearing that she can hardly stand up, and if she walks or stands for too long she feels like she is going to pass out. (Tr. 36). In addition, plaintiff testified to memory issues and also suffers from carpal tunnel syndrome. In fact, plaintiff asserts that she had surgery scheduled for the following week of the hearing with the ALJ. (Tr. 37). Plaintiff asserts that because of all this, she is unable to work.

Plaintiff continues that because she has had numerous severe impairments, it seems unlikely, and rather flawed, to find, as the ALJ did in his first hypothetical, that plaintiff would be capable of occasionally stooping, kneeling, crouching, or crawling, frequently handling and fingering with the bilateral upper extremities; that she cannot be subject to a job that requires fine hearing

8

capabilities; that she must not be subject to a job that requires working outside; and she is limited to understanding, remembering, and carrying out simple instructions and performing simple tasks. (Tr. 18). According to plaintiff, a finding that she is capable of performing her past relevant work subject to the above does not adequately address her mental and physical limitations.

Plaintiff further argues that she is incapable of performing her past relevant work because that job requires sitting or standing for extended periods of time, possible walking, bending, kneeling, crouching, stooping, reaching, hearing, and crawling, and understanding more than simple tasks. Therefore, plaintiff concludes, she is not capable of performing any work. Plaintiff further contends that her condition requires her to take unscheduled breaks throughout the day, which an employer would consider inadequate for job performance. (Tr. 44). Plaintiff therefore asks this Court to reverse the decision denying benefits and remand this case with an award of benefits. In the alternative, plaintiff asserts that the case should be remanded for further proceedings consistent with the above arguments.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ properly determined, at Step Four of the sequential analysis, that plaintiff could perform her past relevant work as a cashier. The Commissioner contends that contrary to plaintiff's argument that the

ALJ erred as a matter of law because he improperly delegated the determination about plaintiff's ability to perform past relevant work to the vocational expert, the ALJ's Step Four finding is supported by relevant Sixth Circuit case law and the regulations.  According to 20 C.F.R. § 404.1560(b)(2):

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.  Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his/her past work.  In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

The vocational expert here described plaintiff's past work as unskilled and medium as she performed it, but as unskilled and light at it is generally performed. (Tr. 43).  Then, in response to a hypothetical question posed by the ALJ that described plaintiff's medically determinable limitations, the vocational expert testified that a hypothetical person similar to plaintiff could perform her past job as a cashier as the job is generally performed.  (Tr. 43).  The Commissioner continues that because this testimony is consistent with 20 C.F.R. § 404.1560(b)(2), plaintiff's objections to it should be rejected.

10

According to the Commissioner, plaintiff's brief does not explain why she felt the ALJ delegated his analysis to the vocational expert.  Instead, plaintiff cited SSR 82-62.  The Commissioner argues that, contrary to plaintiff's unsupported assertions, the ALJ's decision complies with SSR 82-62.  Specifically, the decision contains a detailed RFC finding that accommodated plaintiff's limitations, including her need to work inside (due to her skin cancer), her need for a job that does not require fine hearing capabilities (due to her hearing loss), and her need for jobs that require only frequent handling and fingering (due to her carpal tunnel syndrome).  (Tr. 18).  The Commissioner contends that the ALJ's RFC finding also considered plaintiff's mental limitations as the RFC limited her to understanding, remembering, and carrying out simple instructions and performing simple tasks.  (Tr. 18).  Thus, the Commissioner concludes, the ALJ satisfied the first element of SSR 82-62.

The Commissioner further argues that the ALJ satisfied the second element of SSR 82-62 as well.  The vocational expert testified that plaintiff's past job as a cashier was light and unskilled, as generally performed, and that it had a specific vocational preparation (SVP) of 2.  (Tr. 43).  20 C.F.R. § 404.1560(b)(2) provides that a vocational expert may offer relevant evidence concerning the physical and mental demands of a claimant's past relevant work.  The ALJ here accepted the vocational expert's testimony about the physical and mental demands of plaintiff's

11

past relevant work and plaintiff has not demonstrated that the expert testified in error.  The Commissioner concludes that the ALJ, therefore, made a specific finding regarding the second element of SSR 82-62.

The Commissioner also argues that the ALJ satisfied the third element when he found, based on the vocational expert's testimony, that plaintiff could return to her past relevant work as a cashier.  (Tr. 22).  The Commissioner contends that the ALJ's actions are consistent with the applicable regulation, 20 C.F.R. § 404.1560(b)(2), which specifies that a vocational expert may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work.  Thus, the Commissioner concludes, the ALJ satisfied the third element required by SSR 82-62.  The Commissioner further argues that the ALJ's actions are fully consistent with Sixth Circuit case law.  *See Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 247 (6th Cir. 1987) ("The vocational expert did not determine what restrictions claimant in fact had.  Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.").

12

The Commissioner notes that plaintiff further challenges the ALJ's Step Four finding by asserting, in a contradictory fashion, that the ALJ ignored a question that the ALJ himself posed to the vocational expert.  After the ALJ posed the hypothetical question he based on his RFC finding and the vocational expert responded by testifying that the hypothetical person could perform plaintiff's past job as a cashier, the ALJ posed a second question.  (Tr. 43).  In that question, the ALJ asked about a need for unscheduled breaks, and the vocational expert testified that in the cashier job there was little or no tolerance for unscheduled breaks.  (Tr. 43-44).  Based on that answer, plaintiff argues that had the ALJ considered the vocational expert's answer to this question, "it would have been clear that she would been unable to perform her past relevant work or any other work."  The Commissioner argues that the problem with this argument is that plaintiff has not presented any evidence demonstrating that she needs to take unscheduled breaks. Therefore, the ALJ was under no obligation to take the vocational expert's answer to the question about unscheduled breaks into consideration in his decision.  *See Stanley v. Sec'y of Health & Human Servs*., 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").  The Commissioner contends therefore that the court should reject plaintiff's arguments based on her unsubstantiated need for unscheduled breaks.

The Commissioner argues that in addition to charging that the ALJ

improperly assessed her credibility, plaintiff asserts that the ALJ failed to properly

evaluate the medical records and opinions of evidence, and that she has repeated

her charge that these errors resulted in the ALJ posing an inaccurate hypothetical

question.  The Commissioner contends that these charges are unfounded primarily

because plaintiff's argument fails to refer to any medical evidence and does not set

forth a single medical opinion.  The Commissioner asserts that, as regards

credibility, the ALJ's finding is consistent with the medical evidence.

Specifically, Dr. George F. Ronan, Ph.D., the psychologist who saw plaintiff for a

consultative examination at the request of the agency, observed that plaintiff had a

tendency to exaggerate the degree to which her symptoms negatively influenced

her functioning.  (Tr. 252).  In addition, the ALJ observed that plaintiff did not

leave her job as a cashier because of her medical problems but rather because the

owner of the store died (based on her testimony – Tr. 35), or because the store

came under new management (as she told Dr. Ronan – Tr. 250).  The

Commissioner concludes, therefore, that there were good reasons to question

plaintiff's credibility.

   The Commissioner also notes that plaintiff complains that the ALJ's finding

that she can perform her past relevant work is erroneous because it does not

adequately address her physical and mental impairments, but that plaintiff does not

provide any explanation to support her assertion.  In contrast, the Commissioner

contends that the evidence of record provides substantial support for the ALJ's determinations about plaintiff's physical and mental impairments.  For example, the ALJ limited plaintiff to light work (Tr. 18), and in support, the ALJ referred to an exam done by Dr. Ronald C. Barry, M.D., that revealed good range of motion in plaintiff's extremities.  (Tr. 20, 239).  The ALJ also referred to an exam done by Dr. Zubair Shaikh, M.D., who reported no swelling or erythema in plaintiff's joints, no evidence of active synovitis, and observed normal coordination and a steady gait.  (Tr. 20, 291).  The ALJ also referred to objective studies, including an electromyographic study that showed moderate bilateral carpal tunnel syndrome, but no convincing evidence for significant ulnar neuropathy, and no evidence for myopathy.  (Tr. 325).  The Commissioner further asserts that the ALJ properly relied on the opinion of Dr. Ronan that plaintiff could understand, retain and follow simple instructions.  (Tr. 18, 20, 254).  Thus, the Commissioner argues, contrary to plaintiff's assertions, the ALJ addressed her physical and mental limitations in a manner consistent with the medical evidence of record.

Finally, the Commissioner asserts that plaintiff ends by making unsupported assertions about the nature of her past job as a cashier.  For example, she asserts that she could not perform this job as it involved a number of factors including crouching and crawling.  According to the Commissioner, this assertion is inconsistent with plaintiff's own description of this job in her Work History

Report where she indicated that crouching and crawling were not involved in her cashier/stock job.  (Tr. 161).  Plaintiff also asserts that her condition requires her to take unscheduled breaks throughout the day, but she fails to support this assertion with a citation to the record.  The Commissioner therefore asks this Court to find that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled, and to enter judgment affirming the final decision of the Commissioner.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

16

statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make

17

credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch,

19

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

20

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    The Vocational Testimony

Plaintiff disputes the finding that she could perform her past relevant work as a cashier, contending that the ALJ improperly delegated his authority to the vocational expert in making the Step Four finding.  Plaintiff asserts that the ALJ asked the vocational expert to assume a hypothetical that led to the expert testifying that plaintiff would be able to perform her past relevant work.  Plaintiff also argues that the choice of hypothetical limitations posed to the vocational expert did not reflect her true limitations, and that the ALJ did not abide by the requirements for a Step Four determination, as set forth in SSR 82-62.

Social Security Ruling 82-61 outlines the Commissioner's framework for evaluation at Step Four of the sequential analysis.  The Commissioner first considers whether the claimant has the RFC to perform the functional demands and duties of the past job as actually performed by the claimant.  SSR 82-61, 1982 WL 31387, at *2 (1982).  If so, the claimant is not disabled.  However, the analysis does not end there.  If the claimant is deemed unable to fulfill the job

22

duties of the position as actually performed, the Commissioner is required to consider whether the claimant can perform the functional demands and job duties of the occupation "as generally required by employers throughout the national economy." *Id.* Again, if so, the claimant is not disabled.

The ALJ here determined that plaintiff had the residual functional capacity to perform a reduced range of light duty work. (Tr. 18). The vocational expert testified at the hearing that plaintiff's past relevant work as a cashier is classified as light and unskilled, with an SVP of 2, but that the job was medium and unskilled as actually performed by plaintiff. (Tr. 43). When asked to assume a hypothetical individual with plaintiff's RFC, the vocational expert testified that such a person could perform the cashier job "as it is normally performed in the regional national economy." (*Id.*). The ALJ then made the following Step Four finding:

> The claimant reported that she worked as a cashier. The vocational expert testified that the claimant's job as a cashier, as that job is described in the Dictionary of Occupational Titles, is a light, unskilled job. Assuming the claimant's residual functional capacity as assessed by the undersigned here, the vocational expert testified that the claimant would be able to perform the requirements of this job, based on that description.
>
> Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of the work as a cashier, the undersigned finds that the claimant is able to perform this work as

> generally performed, per the vocational expert's
> testimony.

(Tr. 22). Thus, the ALJ properly found, pursuant to SSR 82-61, that plaintiff can

perform the functional demands and job duties of the cashier position "as

generally required by employers throughout the national economy," and therefore

plaintiff is not disabled, and this finding is supported by substantial evidence.

To the extent plaintiff contends that the ALJ erred in consulting a vocational

expert in determining whether plaintiff was capable of returning to her past

relevant work, that argument fails. It is well-settled that an ALJ is permitted, but

is not required, to elicit the testimony of a vocational expert at Step Four of the

sequential analysis. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395

(6th Cir. 2010); 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of

vocational experts . . . to help us determine whether you can do your past relevant

work[.]" (emphasis added); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.

Appx. 425, 429 (6th Cir. 2007) ("The regulations *permit* an ALJ to use the

services of a vocational expert at step four to determine whether a claimant can do

his past relevant work, given his RFC.") (emphasis added). While "'the ultimate

responsibility for making the necessary findings at step 4 rests with our

adjudicators, we believe that it is appropriate for our adjudicators to consider

evidence from a VE, VS . . . .'" *Merkel v. Comm'r of Soc. Sec.*, 2008 WL 2951276,

24

at *3-4 (E.D. Mich. July 29, 2008) (citing 20 C.F.R. § 404.1560(b)).  Thus, the
ALJ's reliance upon the vocational expert's testimony to support his Step Four
determination of nondisability was entirely proper.

And, plaintiff's argument that the ALJ did not abide by the requirements of
SSR 82-62 in making the Step Four finding is also without merit.  As explained
above, in making the Step Four determination, a three-prong test must be met in
order to find that a claimant can return to her past relevant work: (1) a finding of
fact as to plaintiff's RFC; (2) a finding of fact as to the physical and mental
demands of the past job; and (3) a finding of fact that plaintiff's RFC permits a
return to that past job.  SSR 82-62, 1982 WL 31386, at *2.  The ALJ complied
with these requirements by making a detailed RFC determination and finding that
plaintiff's ability to perform a reduced range of light work met the requirements
for the position of cashier, as that position was generally performed.  *See Maziarz*,
837 F.2d at 247.  While plaintiff would urge the Court to accept her professed
degree of limitation, the ALJ's findings are well within the discretion allotted to
the administrative fact finder.  *See Casey v. Sec'y of Health & Human Servs.*, 987
F.2d 1230, 1235 (6th Cir. 1993).

Further, contrary to plaintiff's complaint that the ALJ erred by "ignoring"
the hypothetical limitation of the need to take unscheduled breaks, the undersigned
suggests that the exclusion of this limitation is well supported.  The rule that a

25

hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005). "In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations he accepts as credible." *Griffeth*, 217 Fed. Appx. at 429. "An ALJ is not required to accept a claimant's subjective complaints, and 'can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.'" *Id.* (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). As the Commissioner correctly states, plaintiff has failed to cite to any record evidence to support the need to take unscheduled breaks, and as explained below, the ALJ's credibility determination is supported by substantial evidence. Accordingly, the ALJ was not required to include that limitation in plaintiff's RFC and plaintiff's claim of error fails. *See Stanley*, 39 F.3d at 118 ("[T]he ALJ is not obligated to incorporate unsubstantiated complaints into his hypotheticals.").

## 2.    The Credibility Determination

Plaintiff also takes issue with the ALJ's credibility determination, arguing in effect that the ALJ erred by discounting testimony and medical evidence supporting a disability finding. The Commissioner responds that plaintiff's

charges are unfounded because she fails to refer to any medical evidence improperly discounted by the ALJ and in fact does not refer to any medical evidence in the record.  Rather, the Commissioner asserts, the ALJ's finding is consistent with the medical evidence.  The undersigned agrees.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1983).  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*.  Second, SSR 96-7p directs that, whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."  *Id.*  Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See, e.g., Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  It is the ALJ's function to determine credibility issues, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), and the court does not make its own credibility determinations.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's.

Rather, the court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed. . . ." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 943, 945 (6th Cir. 2005). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005). "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey*, 987 F.2d at 1234; *see White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

Plaintiff contends that the ALJ's analysis was not supported by substantial evidence based on her testimony as to her limitations. However, as the relevant Social Security regulations make clear, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and

28

the objective medical evidence contradict each other.").

The undersigned suggests that the ALJ's credibility findings were both well explained and well supported.  The ALJ noted that despite plaintiff's claimed difficulty lifting, standing, hearing, stair climbing, seeing, remembering, concentrating, understanding, and using her hands, plaintiff "cares for pets, attends to her personal care needs, cooks, cleans, does laundry, drives, shops, pays bills, counts change, uses a checkbook, watches television, completes puzzles, plays poker, and spends time with others." (Tr. 19, citing Tr. 171-78).  The ALJ further properly noted that "there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments.  Specifically, she quit working because she was laid off." (Tr. 20).  In addition, the ALJ noted that the medical findings do not support the existence of limitations greater than the RFC here and do not sustain plaintiff's allegations of disabling pain, noting that inconsistencies between plaintiff's allegations and the medical evidence weaken plaintiff's credibility.  (Tr. 20-21).

As the Commissioner properly explains, the medical evidence supports the ALJ's finding.  Consultative examiner Dr. Ronan observed that plaintiff had a tendency to exaggerate the degree to which her symptoms negatively influenced her functioning.  (Tr. 252).  Further, the ALJ acknowledged that various radiologic studies revealed small plantar and posterior calcaneal spurs on plaintiff's right

29

ankle, non-compressive disc protrusion at L5-S1, and disc herniation at C4-5 and C5-6 with some loss of normal lordosis, but were otherwise unremarkable, and that examinations showed good range of motion in all extremities, bilateral carpal tunnel syndrome without any significant denervation changes and no evidence of cervical radiculopathy, normal bulk, tone and strength, symmetrical reflexes, and a normal gait. (Tr. 45). And, additional examinations revealed that plaintiff was fully oriented with an intact memory, cooperative with appropriate hygiene and attire, and that plaintiff was capable of understanding, retaining, and following simple instructions as well as capable of understanding simple changes in the work environment. (Tr. 45-46). Tellingly, plaintiff fails to support her contention that the ALJ erred in evaluating the medical record evidence with any citation to the record, including failing to identify any evidence to support her assertion of a need to take unscheduled breaks, and her claim of error should fail.

Plaintiff also asserts that the ALJ erroneously determined that plaintiff could perform her past work as a cashier despite her "documented" severe impairments. Plaintiff appears to be arguing that merely because she has severe impairments, she must be precluded from all work. However, that is inaccurate. The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."

30

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth*, 217 Fed. Appx. at 429; 20 C.F.R. § 404.1545(e). Thus, while the medical evidence indicates that plaintiff does have severe impairments as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of her limitations. Indeed, there is evidence to support the ALJ's finding that plaintiff was able to perform a limited range of light work, and thus there is substantial evidence to support the ALJ's finding that plaintiff was not fully credible, and the plaintiff's claim of error should be denied.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is

31

substantial evidence in the record that would have supported an opposite

conclusion.").

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: March 25, 2014                          s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 25, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, John L. Martin, Theresa M. Urbanic.

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov